UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERESTED LONDON UNDERWRITERS,
as subrogee of Polo Ralph
Lauren Corporation,

           Plaintiff,

- against -

KELLY GLOBAL LOGISTICS, INC.,
KELLY FREIGHT SYSTEMS, INC.,
TRANS-PRO LOGISTICS, INC.,
TRANSPRO LOGISTICS, INC.,
HEARTLAND EXPRESS, INC., and
HEARTLAND EXPRESS, INC. OF
IOWA,

           Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/29/08

## OPINION AND ORDER

06 Civ. 5845 (PKL)

**APPEARANCES**

COZEN O'CONNOR
David Y. Loh, Esq.
45 Broadway, 16th Floor
New York, New York 10006

Attorney for Plaintiff

CONCEPCION & ASSOCIATES, P.A.
Francis X. Sexton, Jr., Esq.
M. Scott Leonard, Esq.
355 Alhambra Circle, Suite 1250
Coral Gables, Florida 33134

Attorneys for Defendant Kelly Global Logistics, Inc.

COOPER, BROWN & BEHRLE P.C.
Sandra Gale Behrle, Esq.
625 Madison Avenue, 12th Floor
New York, New York 10022

Attorney for Defendant TransPro Logistics, Inc.

**LEISURE, District Judge:**

Plaintiff, Interested London Underwriters ("ILU"), is a group of marine cargo underwriters located in London, England, acting in this case as a subrogee of Polo Ralph Lauren Corporation ("Polo"). In that capacity, ILU alleges that defendants are liable to Polo with respect to merchandise that was set to be delivered from Miami, Florida to Greensboro, North Carolina, but was instead stolen in Fort Lauderdale, Florida. ILU asserts causes of action sounding in breach of contract, negligence, and breach of bailment obligations. Two of the three defendants that have appeared -- TransPro Logistics, Inc. ("TransPro")[1] and Kelly Global Logistics, Inc. ("Kelly")[2] -- now move under Federal Rule of Civil Procedure 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. Kelly also seeks to dismiss for improper venue pursuant to Rule 12(b)(3), or alternatively to transfer the action to the Southern District of Florida under 28 U.S.C. § 1404(a). For the reasons set forth below, dismissal is warranted as to defendant TransPro, and in the interest of justice pursuant to 28 U.S.C § 1406(a), this action is transferred to the Southern District of Florida.

---

[1] ILU has named TransPro Logistics, Inc. and Trans-Pro Logistics, Inc. as defendants in this action. According to TransPro, it is not at all associated with Trans-Pro Logistics, Inc. Further, Trans-Pro Logistics, Inc. has not been served and has not appeared in this case.

[2] According to Kelly, defendant Kelly Freight Systems, Inc. changed its name to Kelly Global Logistics, Inc. on May 6, 2004. While both named entities are listed as defendants, only Kelly Global Logistics, Inc. has been served and has appeared in this case.

1

## BACKGROUND

Polo is engaged in the business of manufacturing, producing, distributing, and selling designer-wear apparel. (See Compl. ¶ 11.)[3] Polo purchased the merchandise at issue here -- 509 cartons consisting of 308 pieces of Men's Classic Khaki pants and 14,669 pieces of Nubuck men's pants -- from Apparel Group International, a company located in Santiago, Dominican Republic. (Compl. ¶ 16; Kelly's Memo. of Law, Ex. D.) On June 1, 2005, Kelly and Polo entered into a Logistics Services Agreement (the "Agreement"), whereby Kelly agreed to provide logistics services to Polo in connection with the shipment of Polo's merchandise from Miami, Florida to Greensboro, North Carolina. (See Kelly's Memo. of Law, Ex. C.) In furtherance of the Agreement, Kelly contacted TransPro, a truck-brokerage service company in Miami, to arrange for a truck carrier to deliver Polo's merchandise. TransPro, in turn, hired defendants Heartland Express, Inc. and Heartland Express, Inc. of Iowa

---

[3] Though ILU's complaint is sparse on details, it has adopted Kelly's recitation of the facts as set forth in its memorandum of law. Further, "'[a] Rule 12(b)(2) motion is inherently a matter requiring the resolution of factual issues outside of the pleadings . . . [and] all pertinent documentation submitted by the parties may be considered in deciding the motion.'" Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995) (quoting John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co., No. 91 Civ. 3644, 1992 U.S. Dist. LEXIS 1113, at *1 n.1 (S.D.N.Y. Feb. 5, 1992)).

2

(collectively "Heartland")[4] to transport the merchandise from Miami to Greensboro.

On Friday, November 4, 2005, after arriving at Kelly's warehouse in Miami, the cargo was picked up by Heartland's driver, Richard David Moore ("Moore"). (Kelly's Memo. of Law, Exs. E, F.) Moore planned to embark on his trip to Greensboro on Sunday, November 6, 2005, after visiting his family in Hollywood, Florida. (Id. Ex. F.) He parked and left the tractor and loaded trailer on a public roadway in Fort Lauderdale, Florida, and drove his own vehicle, which he had left on the roadway a week before, to Hollywood. (Id.) Upon returning to the roadway on Sunday afternoon, Moore found that the tractor-trailer was missing. (Id.) He called Heartland's dispatch, which then reported the theft to the Fort Lauderdale Police Department. (Id.) On November 8, 2005, the tractor-trailer was found by the Broward County Sheriff's Office; Polo's merchandise was not in the trailer. (Id. Ex. G.) A partial recovery of the merchandise -- 2,904 pieces in ninety-nine cartons -- was made by the police on December 13, 2005. (Id. Ex. H.)

As a result, ILU filed the instant action for breach of contract, negligence, and breach of bailment obligations. ILU claims that Polo sustained damages in the amount of $513,952.50.

---

[4] Unlike its co-defendants, Heartland has not moved to dismiss the complaint. It filed its answer on October 11, 2006, generally denying ILU's allegations and asserting cross-claims against Kelly and TransPro.

3

(Compl. ¶¶ 21, 25, 30, 37.) TransPro and Kelly now argue that ILU's complaint should be dismissed because the Court cannot properly exercise personal jurisdiction over them. Kelly alternatively claims that the complaint should be dismissed because of improper venue, or, at the very least, the action should be transferred to the Southern District of Florida.

## DISCUSSION

### I. Personal Jurisdiction Over Defendant TransPro

A. Standard for a Rule 12(b)(2) Motion

When considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, it is well established that "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." Metro. Life Ins. Co., 84 F.3d at 566. While personal jurisdiction must ultimately be proven by a preponderance of the evidence, "where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." A.I. Trade Fin., Inc. v. Petra Bank, 989

4

F.2d 76, 79-80 (2d Cir. 1993) (Jacobs, J.); see also Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

Further, "[a]bsent a specific grant of jurisdiction, the reach of a federal district court's personal jurisdiction is coterminous with that of the personal jurisdiction of a court of general jurisdiction in the state in which the court sits." Geller Media Mgmt., Inc. v. Beaudreault, 910 F. Supp. 135, 137 (S.D.N.Y. 1996) (Leisure, J.) (citing Fed. R. Civ. P. 4(k)(1)(A)). ILU alleges jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, which do not expand the jurisdiction of the federal district courts. See United Van Lines, LLC v. Marks, 366 F. Supp. 2d 468, 471-72 (S.D. Tex. 2005) ("The Carmack Amendment is silent as to service of process, so the Court's personal jurisdiction is coterminous with that of a [state] court of general jurisdiction."). Thus, to determine whether it has personal jurisdiction over TransPro, the Court must engage in a two-part inquiry. First, it must determine whether there is personal jurisdiction over TransPro under New York state law; second, if New York law provides for personal jurisdiction, the Court must determine whether the assertion of jurisdiction comports with the constitutional requirements of due process. Id.

There are two types of jurisdiction that a court may exercise over a defendant: general and specific. See

Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984). In order for a court to exercise general jurisdiction, plaintiff's claim need not arise out of defendant's contacts with the forum state, but defendant's contacts must be substantial; with specific jurisdiction, on the other hand, defendant's contacts need not be as substantial, but plaintiff's claim must arise out of the contacts. These two types of jurisdiction are reflected in New York's jurisdictional statutes, see N.Y. C.P.L.R. §§ 301-302 (McKinney 2001), and in the jurisprudence interpreting the Due Process limits of jurisdiction, see Helicopteros, 466 U.S. at 414.

B. C.P.L.R. § 301

Section 301 of the CPLR provides for the exercise of "jurisdiction over such persons, property, or status as might have been exercised heretofore." N.Y. C.P.L.R. § 301 (McKinney 2001). The section permits courts to exercise personal jurisdiction over a foreign corporation that is "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of 'presence'" in the state. Carell v. Shubert Org., Inc., 104 F. Supp. 2d 236, 268 (S.D.N.Y. 2000) (citation omitted). To be found "doing business" in the state for Section 301 purposes, a corporation must be present in the state "not occasionally or casually, but with a fair measure of permanence and continuity." Landoil Res. Corp. v. Alexander &

Alexander Servs. Inc., 918 F.2d 1039, 1043 (2d Cir. 1990) (quoting McGowan v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323 (1981)). New York courts have traditionally considered the following factors when making this determination: (1) the existence of an office in New York; (2) the solicitation of business in New York; (3) the presence of bank accounts or other property in New York; and (4) the presence of employees or agents in New York. Id. Given the current posture of the case, TransPro must "assume[] the truth of the plaintiff's factual allegations for the purposes of the motion" and be "content to challenge only [their] sufficiency . . . . ." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990) (Newman, J.).

The complaint in this action alleges that "Transpro Logistics, Inc. is a corporation organized under the laws of Florida, authorized to do business in every state of the United States, including New York, with a principal place of business located at 8200 NW 52nd Terrace, Suite 102, Miami, Florida 33166." (Compl. ¶ 7.) This allegation, liberally construed, is insufficient to establish personal jurisdiction over TransPro. ILU has not sufficiently alleged that TransPro has an office in New York, solicits business in New York, has property in New York, or has employees or agents in New York. Indeed, ILU's only argument for jurisdiction under § 301 is that co-defendant

Trans-Pro Logistics, Inc. ("Trans-Pro"), which maintains an office in Champlain, New York, (Pl.'s Opp. to TransPro, Ex. B), "differs from TransPro by only a hyphen" and because ILU "do[es] not know if Trans-Pro is a related or affiliated company of TransPro, . . . [the] motion to dismiss should not be decided until at least some discovery is conducted on this very issue." (Id. at 7.) ILU's uncertainty, however, is not enough to constitute a prima facie showing of personal jurisdiction over TransPro pursuant to C.P.L.R. § 301. ILU has not alleged any facts connecting TransPro with Trans-Pro, aside from the similarity in the entities' names. Further, TransPro's president, Alfredo Silva, has specifically denied any relationship between the two companies. (See Silva Supp. Decl.) As such, the Court does not have general jurisdiction.[5]

C. C.P.L.R. § 302

ILU's assertion of personal jurisdiction under C.P.L.R. Section 302 appears limited to § 302(a)(3), which provides in relevant part:

---

[5] In a letter to the Court dated December 4, 2006, ILU references a newly discovered Carrier Contract Agreement between TransPro and Heartland in which "[a] $350.00 charge will be assessed, in addition to the applicable linehaul, on all shipments destined to points falling within the following New York zip codes: 100-104; 110-119." ILU states that "Mr. Silva's assertion that Trans Pro had no contacts with the State of New York appears to be contradicted by this contract." The Court disagrees. This language does not show that TransPro has any contacts in New York. Rather, it appears to represent Heartland's extra charge -- likely a boilerplate provision for a carrier -- to any shipment that is sent to New York City. It is undisputed that the shipment at issue here was not destined for New York. Further, ILU has failed to allege any facts indicating that TransPro ever performed any services in New York.

8

> (a) [A] Court may exercise personal jurisdiction
> over a non-domiciliary, or his executor or
> administrator, who in person or through an agent
> (3) commits a tortious act without the state
> causing injury to person or property within the
> state, . . . if he (i) regularly does or solicits
> business, or engages in any other persistent
> course of conduct, or derives substantial revenue
> from goods used or consumed or services rendered,
> in the state, or (ii) expects or should reasonably
> expect the act to have consequences in the state
> and derives substantial revenue from interstate or
> international commerce . . . .

N.Y. C.P.L.R. § 302(a)(3) (McKinney 2001).

To establish jurisdiction under this provision, ILU must make a prima facie showing of the following: (1) TransPro committed a tortious act outside of the state; (2) the cause of action arises from that act; (3) the act caused the injury to a person or property within the state; (4) TransPro expected or should reasonably have expected the act to have consequences in the state; and (5) TransPro derived substantial revenue from interstate or international commerce. See LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214, 735 N.E.2d 883, 886 (2000). New York courts have devoted considerable attention to the third element, causing injury within the state, as they have attempted to fashion a clear test for locating the place of injury. When "determining whether the injury in New York is sufficient to warrant § 302(a)(3) jurisdiction [courts] must generally apply a situs-of-injury test, which asks them to locate the 'original event' which caused the injury." Bank Brussels Lambert v.

9

Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 791 (2d Cir. 1999); see also Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001). "The 'original event' is, however, generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort." Bank Brussels Lambert, 171 F.3d at 791; see also Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990) ("'[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff.'") (quoting Carte v. Parkoff, 152 A.D.2d 615, 616, 543 N.Y.S.2d 718, 719 (2d Dep't 1989)). Thus, it is of "paramount importance that the exercise of personal jurisdiction must be based on a direct injury within the state and a close expectation of consequences within the state stemming from the tortious act." Bank Brussels Lambert, 171 F.3d at 791 (quotations and citations omitted).

ILU claims that the Court has specific jurisdiction because TransPro derives significant revenue from interstate commerce. In so doing, ILU ignores the predicate requirement for jurisdiction under § 302(a)(3)(ii), namely that the tortious act must cause injury within New York. Here, the original event that caused the injury -- the theft of Polo's merchandise -- occurred in Florida. There is no indication that this theft caused direct injury to Polo or ILU in New York. That Polo is

10

allegedly headquartered in New York is not sufficient to
constitute such direct injury. See Plastwood Corp. v. Robinson,
No. 04 Civ. 3214, 2004 U.S. Dist. LEXIS 17403, at *17 (S.D.N.Y.
Aug. 30, 2004) ("New York does not become the situs of the
injury merely because the plaintiff is a domiciliary or resident
of New York.") (citing Am. Eutectic Welding Alloys Sales Co. v.
Dytron Alloys Corp., 439 F.2d 428, 433 (2d Cir. 1971)). Based
upon the present record, therefore, ILU has failed to make a
prima facie showing that the tractor-trailer theft caused it
injury within New York.[6] As a result, the Court cannot exercise
personal jurisdiction over TransPro pursuant to Section
302(a)(3).[7]

## II. Transfer of Venue

Even though this Court lacks personal jurisdiction over
TransPro, it may nevertheless transfer to the Southern District
of Florida if (1) both jurisdiction and venue are proper there
as to all defendants, and (2) if such transfer would be in the

---

[6] ILU also argues that "to the extent that TRANSPRO's motion to dismiss is
dependent upon a legal determination as to TRANSPRO's legal status under the
Carmack Amendment, TRANSPRO's motion to dismiss is premature." (Pl.'s Reply
to TransPro at 4-5.) As ILU points out, the Carmack Amendment, *inter alia*,
imposes different sets of duties and responsibilities on a party depending on
whether it is a motor carrier or a broker. The Court fails to see, and ILU
fails to explain, how the Court's personal jurisdiction analysis would be
affected by TransPro's status under the Carmack Amendment. Whether TransPro
is a motor carrier or a broker, this Court would not have personal
jurisdiction over ILU's claims against it.

[7] Because the Court finds that the exercise of personal jurisdiction over
defendants does not satisfy New York's statutory requirements, it need not
address whether it comports with the constitutional guarantee of due process.

11

interest of justice. 28 U.S.C. § 1406(a) (2006) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); see Corke v. Sameiet M.S. Song of Norway, 572 F.2d 77, 79 (2d Cir. 1978) ("'The language of § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendants or not.'") (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465 (1962)); Hatfield v. Asphalt Int'l, Inc., No. 03 Civ. 1372, 2004 U.S. Dist. LEXIS 2036, at *14 (S.D.N.Y. Feb. 11, 2004) ("The decision to transfer rather than dismiss 'lies within the sound discretion of the district court,' keeping in mind the general purpose of § 1406's transfer provision is to 'remov[e] whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits.'") (quoting Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993); Goldlawr, Inc., 369 U.S. at 466-67). Moreover, "[a] court may transfer a case pursuant to 28 U.S.C. § 1406(a) *sua sponte* even if the defendant moves only to dismiss." Holey Soles Holdings, Ltd. v. Foam Creations, Inc., No. 05 Civ. 6893, 2006 U.S. Dist. LEXIS 25880, at *27-28 (S.D.N.Y. May 2, 2006) (Mukasey, J.).

12

There would be personal jurisdiction over TransPro and Kelly in Florida. See Fla. Stat. § 48.193(2) ("A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."). TransPro and Kelly are both Florida corporations with respective headquarters in Miami. Further, Heartland, an Iowa corporation, was the company responsible for transporting Polo's goods from Florida. Indeed, the truck that was to carry the merchandise was stolen in Florida. See Fla. Stat. § 48.193(1)(b). Venue also would be proper by virtue of 28 U.S.C. § 1391(b), which provides that, where jurisdiction is not founded solely upon diversity of citizenship, venue may lie in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).

Transfer also would be in the interest of justice. Courts generally consider the same factors when deciding whether to transfer pursuant to 28 U.S.C. § 1404(a) or § 1406(a), see, e.g., Bank of Am., N.A. v. Hensley Props., LP, 495 F. Supp. 2d 435, 440 (S.D.N.Y. 2007), namely (1) the weight accorded a plaintiff's choice of forum; (2) the convenience of witnesses;

(3) the location of relevant documents and the relative ease of access to sources of proof; (4) the convenience of the parties; (5) the locus of the operative facts; (6) the availability of process to compel attendance of unwilling witnesses; (7) the relative means of the parties; (8) a forum's familiarity with the governing law; and (9) trial efficiency and the interest of justice based on the totality of the circumstances. See Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 404 (S.D.N.Y. 2004); Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 56-57 (S.D.N.Y. 2001); Trehern v. OMI Corp., No. 98 Civ. 0242, 1999 U.S. Dist. LEXIS 919, at *5 (S.D.N.Y. Feb. 1, 1999).

Although defendant Kelly likely is bound by the forum-selection clause in the Agreement, which calls for venue in the Southern District of New York,[8] the entire action should be

---

[8] The Agreement's forum-selection clause will be enforced "unless it is shown that to enforce it would be 'unreasonable and unjust' or that some invalidity such as fraud or overreaching is attached to it." New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997). Kelly states that "the forum-selection clause in this case is clearly unreasonable because the witnesses, events and relevant documents concerning liability are located in Florida. Even the Plaintiff is not located within the jurisdiction. . . . Therefore, the forum-selection clause should be found unreasonable and the case dismissed . . . ." (Kelly's Memo. of Law at 16.) By arguing that the forum-selection clause is invalid because New York lacks personal jurisdiction, Kelly attempts to put the cart before the horse. Instead, if the forum-selection clause is valid, the Court has personal jurisdiction over Kelly. See Koninklijke Philips Elecs. v. Digital Works, Inc., 358 F. Supp. 2d 328, 332 (S.D.N.Y. 2005) ("Defendant's principal argument in asserting that the clause is unreasonable is that New York lacks personal jurisdiction over defendant. However, New York does have personal jurisdiction over defendant provided that the forum selection clause is valid; thus, we are not convinced by defendant's argument."). And Kelly offers no viable reason as to why the clause would produce a grave inconvenience and thus be invalid. Kelly would

14

transferred to the Southern District of Florida. See Tiernan v. Westext Transp., Inc., 243 F. Supp. 566, 567-68 (S.D.N.Y. 1965) (transferring entire action under § 1406 "as to all defendants when venue is improperly laid only as to some"). The Court accords ILU's choice of forum deference and understands that it filed this action here because of the Agreement with Kelly.[9] However, the Court does not have jurisdiction over defendant TransPro. It would thus be in ILU's interest to try this action as a whole, against all of the entities allegedly liable, rather than separating the case between two fora. See Holey Soles Holdings, Ltd., 2006 U.S. Dist. LEXIS 25880, at *27 (S.D.N.Y. May 2, 2006) ("[S]uch a transfer would benefit the plaintiff, which will avoid the chore of refiling this action."); Grajeda

---

be able to defend against the action in New York, a point that Kelly itself effectively conceded by agreeing to select New York as a forum. See Phillips v. Audio Active Ltd., 494 F.3d 378, 393 (2d Cir. 2007) (enforcing a forum-selection clause where the party "has not declared any of his claimed hardships are other than the obvious concomitants of litigation abroad, or were not foreseeable when he agreed to litigate in England") (internal citations omitted).

[9] Even if the forum-selection clause is binding, the Court may transfer. The Supreme Court has held, in the context of transfer under 28 U.S.C. § 1404(a), that an agreement by the parties that a particular forum shall have "exclusive jurisdiction" over disputes is a "significant factor that figures centrally in the district court's calculus." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). However, as Stewart makes clear, the existence of a mandatory forum-selection clause does not by itself dispose of a motion to transfer under § 1404(a). Indeed, despite the fact that Stewart involved a contract containing a clause giving "exclusive jurisdiction" to one particular forum, id. at 24 n.1, the Court remanded the case for the district court to determine the forum clause's effect on the respondent's § 1404(a) motion. See id. at 32; see also Falconwood Fin. Corp. v. Griffin, 838 F. Supp. 836, 840 (S.D.N.Y. 1993) (citing Stewart, 487 U.S. at 32); Water Energizers, Ltd. v. Water Energizers, Inc., 788 F. Supp. 208, 212-13 (S.D.N.Y. 1992) (conducting a § 1404(a) analysis after finding that a choice-of-forum clause was mandatory).

15

v. Aeroil Prods. Co., No. 96 Civ. 0534, 1999 U.S. Dist. LEXIS 14862, at *9 (S.D.N.Y. Sept. 23, 1999) (Leisure, J.) ("The Court assumes . . . that plaintiff would prefer a transfer to Connecticut to the dismissal of his action and the costs and delays associated with commencing a new action.").

Moreover, transfer to the Southern District of Florida does not prejudice any defendant; rather, it will lead to a more efficient adjudication of this case on the merits. Indeed, defendants TransPro and Kelly will have the opportunity to defend against the action in the district in which they operate their respective businesses. Further, based upon the papers before the Court, the locus of the operative facts occurred in Florida and most key witnesses and documents related to this case can be found in Florida. See Hensley Props., LP, 495 F. Supp. 2d at 440 (transferring where "all of the operative facts took place in California, and it is therefore likely that most of the witnesses and documents are located there" and where "[t]he Court would lack power to compel the attendance of any unwilling witnesses"); Hatfield, 2004 U.S. Dist. LEXIS 2036, at *16 ("Defendants would not be prejudiced, but would likely benefit by having the case transferred to the Southern District of Florida, given that their business operations, and presumably many potential witnesses and relevant documents, are based there."). Finally, there is no indication that defendant

16

Heartland, which has not objected to Kelly's motion to transfer, would be prejudiced by transfer. See Tiernan, 243 F. Supp. at 568 (transferring entire action where one defendant did not interpose an objection to the relief sought by other defendants). Accordingly, this action is transferred to the Southern District of Florida.

## CONCLUSION

For the reasons discussed above, the Court lacks personal jurisdiction over defendant TransPro. Pursuant to 28 U.S.C. § 1406(a), in the interest of justice, this action is transferred to the Southern District of Florida.

**SO ORDERED.**

New York, New York
February **29**, 2008

_____
U.S.D.J.